AO 91 (Rev. 11/11)  Criminal Complaint

AUSA:  Sara Woodward  Telephone: (313) 226-9100
Special Agent:  Austin Dawn  Telephone: (313) 202-3500

# UNITED STATES DISTRICT COURT
for the
Eastern District of Michigan

United States of America
v.

Cleve NICHOLS, III

Case No. Case: 2:24−mj−30444
Assigned To : Unassigned
Assign. Date : 10/15/2024
Description: CMP USA V. NICHOLS (DJ)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __October 12, 2024__ in the county of __Oakland__ in the __Eastern__ District of __Michigan__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_Complainant's signature_

Special Agent Austin Dawn - ATF
_Printed name and title_

Sworn to before me and signed in my presence and/or by reliable electronic means.

Date: October 15, 2024

City and state: Detroit, Michigan

_Judge's signature_

Honorable Kimberly G. Altman, U.S. Magistrate Judge
_Printed name and title_

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Austin Dawn, being duly sworn, hereby state:

**INTRODUCTION**

1. I am a Special Agent (SA) with the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and began my tenure with the ATF on November 05, 2023. I am currently assigned to the Detroit Field Division, Group II, Crime Gun Enforcement Team (CGET). As an ATF SA, I have received specialized training at the Federal Law Enforcement Training Center, including the Criminal Investigator Training Program and Special Agent Basic Training. During these programs, I received a total of twenty-seven weeks of instruction (400+ hours) on subjects including federal criminal law, criminal investigations, interview techniques, surveillance, undercover operations, evidence collection and firearms trafficking.

2. Before joining the ATF, I earned my bachelor's degree in criminal justice from Oakland University and spent three years with the United States Customs and Border Protection (CBP). During my three years with CBP, I conducted hundreds of inspections of vehicles for drugs, firearms, money, and other contraband entering and leaving the United States. I also conducted hundreds of interviews with

1

individuals attempting to make entry into the U.S. and suspected of conducting illegal activity inside the U.S.

3. This affidavit is made in support of an application for a criminal complaint for Cleve NICHOLS III (DOB: XX/XX/1989).

4. I have probable cause to believe that NICHOLS III knew he was a convicted felon and knowingly possessed a firearm that traveled in interstate commerce, in violation of 18 U.S.C. § 922(g)(1). I also have probable cause to believe that NICHOLS III violated 18 U.S.C. § 922(q)(2)(A) by possessing a firearm in a school zone.

5. I make this affidavit based on my participation in this investigation, reports from other law enforcement agents, communications with others who have personal knowledge of the events and circumstances described herein, and information gained from my training and experience.

6. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all my knowledge about this matter nor all details or all facts relating to this investigation.

## **PROBABLE CAUSE**

7. On October 12, 2024, deputies from the Oakland County Sheriff's Office (OCSO) were dispatched to a school gymnasium in Pontiac in response to a

call for service involving a person with a gun. The armed individual was described as wearing camouflage pants and a black hooded sweatshirt.

8. While the officers were en route, dispatch updated that the suspect was threatening attendees of a school basketball game with a pistol hanging out of his pocket and that the school gym was barricaded while the suspect was just outside the gym.

9. Upon arrival, a deputy observed a suspect matching the description provided by dispatch walk from the north side of the gymnasium towards a red Ford Flex and begin to enter the driver seat of the vehicle. Law enforcement approached the suspect and detained him; he was later identified as NICHOLS III.

10. Police spoke with witnesses. Several people in the parking lot told police that NICHOLS III had just placed a gun underneath a gray Ram Pickup truck, which was parked perpendicular to the red Ford Flex. Underneath the truck, law enforcement located a Diamond Back, DB9, 9mm pistol with one round in the chamber and 13 live rounds in the magazine (pictured below).



3

11. While on scene, police interviewed a school employee (Employee-1) who stated that NICHOLS III had been in the school with a gun in his pocket. Employee-1 said that NICHOLS III was upset with one of the coaches. Employee-1 stated that he/she stood in front of NICHOLS III and NICHOLS III asked him/her to move. Employee-1 stated that he/she told NICHOLS III to consider the children. When Employee-1 would not move out of the way, NICHOLS III exited the gym. Employee-1 stated that approximately 50 people were inside the school with approximately 25-30 being children.

12. Police interviewed another witness (Witness-1) who owned the gray Ram truck that the gun was under. Witness-1 stated that he/she noticed a commotion by the entrance to the gym. Witness-1 stated that he/she noticed NICHOLS III arguing with one of the coaches and that he had his hand inside of his front pocket. Witness-1 stated that NICHOLS III yelled "I'll air this place out." Witness-1 stated that he/she observed NICHOLS III pull a handgun halfway out of his pocket. Later, Witness-1 went outside and heard other people say that NICHOLS III had put a gun under a car. Witness-1 looked under his/her truck and saw a firearm. He/she pointed it out to law enforcement, who retrieved the weapon.

13. Police interviewed another witness (Witness-2) who was at the game. Witness-2 stated that he/she looked up and observed NICHOLS III yelling at the coach that he would air him out and "air out this bitch." Witness-2 stated that he/she

observed a gun protruding from NICHOLS III pocket. Witness-2 stated that he/she observed Employee-1 and other individuals pleading with NICHOLS III to leave. Witness-2 reported that NICHOLS III eventually left the gym.

14. On October 14, 2024, ATF task force officers conducted a post-*Miranda* interview with NICHOLS III at the Oakland County Jail. During this interview, NICHOLS III initially stated that he did not possess a firearm, asked for an attorney, and the ATF TFOs left the interview room.

15. Approximately 10 minutes later, NICHOLS III knocked on the interview door and stated, "I wouldn't try and go up to the school and hurt nobody." Immediately after, the TFO confirmed with NICHOLS III that he already invoked his right to have an attorney present and that for them to continue to discuss his arrest NICHOLS III would need to waive that right. NICHOLS III stated that he understood his rights and wanted to speak without an attorney present. At this juncture, NICHOLS III stated that he was a felon who could not possess firearms and eventually admitted to having the recovered firearm in his pocket while in the gym. NICHOLS III also admitted that when he observed the police arrive, he hid the gun under the truck in the parking lot.

16. A search of the Law Enforcement Information Network (LEIN) revealed that NICHOLS III has the following felony convictions:

    a. 2012: pled guilty to felony possession of a controlled substance (cocaine/heroin or another narcotic) under 25 grams;

    b. 2013: pled no contest to assault with a dangerous weapon, and was sentenced to 1 to 8 years;

    c. 2023: pled no contest to domestic violence and/or knowingly assaulting a pregnant individual, 3rd offense notice, felony.

17. Based on my training and experience, criminal defendants are warned of the maximum penalty when they enter a plea of guilty to a felony. Additionally, defendants are advised that they are pleading guilty to a felony. Based on the number of convictions, the time he has spent incarcerated as a result of those convictions, there is probable cause to believe that NICHOLS III is aware of his status as a convicted felon.

18. ATF Special Agent Kara Kluacs, an ATF Interstate Nexus Expert, was provided with a verbal description of the recovered Diamondback DB9, 9mm pistol, recovered by OCSO. Based upon the verbal description, Special Agent Klupacs advised that the firearm is a firearm as defined under 18 U.S.C. § 921 and was manufactured outside of the state of Michigan after 1898. Therefore, the weapon traveled in and affected interstate commerce.

## CONCLUSION

19. I respectfully submit that there is probable cause to believe that on October 12, 2024, within the Eastern District of Michigan, Cleve NICHOLS III, who knew he was a convicted felon, knowingly possessed a firearm in a school zone in violation of 18 U.S.C. § 922(g)(1) and 18 U.S.C. § 922(q)(2)(A).

Respectfully submitted,

_____
Austin Dawn, Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to before me and signed in my presence
And/or by reliable electronic means

_____
Honorable Kimberly G. Altman
United States Magistrate Judge

Dated: _____October 15, 2024_____